**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,                          Criminal Case No. 18-20423

v.

                                          Honorable Nancy G. Edmunds

D-2 WILLIAM OWDISH,

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S EMERGENCY**
**MOTION FOR COMPASSIONATE RELEASE [67, 69]**

Pending before the Court is Defendant's *pro se* Motion for Compassionate Release. (ECF Nos. 67, 69.)  Defendant requests that pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) the Court convert the remainder of his sentence to a term of supervised release with a condition of home confinement.  Defendant contends his health condition constitutes an extraordinary and compelling circumstance justifying this relief in the wake of the COVID-19 pandemic.  The government opposes the requested relief and has filed a response. (ECF No. 70.)  The Court has reviewed the record in its entirety and finds that a hearing on this matter is not necessary.  For the reasons set forth below, the Court **GRANTS** Defendant's motion.

### I.      BACKGROUND

On March 14, 2019, Defendant pled guilty to one count of conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. 1343 and 1349.  The conduct underlying Defendant's plea is his role as a patient recruiter in a health care fraud scheme orchestrated by his co-defendant, Najam Khan.  More specifically, during the course of the health care fraud conspiracy, Defendant received illegal kickbacks and bribes from

Khan in exchange for patient referral information that was then used by Khan to submit false and fraudulent claims to Medicare.  According to the Government, Defendant's conducted netted approximately $778,912.68 in fraudulent claims for the benefit of the conspiracy, and Defendant directly received in excess of $200,000 for his services.

On January 14, 2020, the Court sentenced Defendant to be imprisoned for a term of 12 months and 1 day.  On February 25, 2020, Defendant began serving his sentence. Defendant is currently confined at FCI Morgantown.  According to the Government, Defendant's projected release date is January 01, 2021.

Defendant is 52 years old.  According to his medical records, he suffers from a myriad of health conditions, most notably obesity and hypertension.  He also claims to suffer from high blood pressure, acute renal failure, rhabdomyolysis, elevated troponin, and comportment syndrome, among other ailments.  Defendant contends his health conditions place him in the COVID-19 highest-risk category.  And the Government agrees with Defendant's assessment of his health.

On May 18, 2020, Defendant submitted a request to the BOP for compassionate release due to the COVID-19 pandemic.  On May 26, 2020, the BOP denied Defendant's request, finding that Defendant's concerns about potentially being exposed to or possibly contracting COVID-19 did not warrant his early release from incarceration.  On June 19, 2020, Defendant filed the instant motion for compassionate release with the Court.  The motion has been fully briefed and is ripe for consideration.

## II.   ANALYSIS

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows (emphasis added):

> The court may not modify a term of imprisonment once it has been imposed
> except that—in any case—the court, upon motion of the Director of the
> Bureau of Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the Bureau of
> Prisons to bring a motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may impose
> a term of probation or supervised release with or without conditions that
> does not exceed the unserved portion of the original term of imprisonment),
> after considering the factors set forth in section 3553(a) to the extent that
> they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction ...
>> and that such a reduction is consistent with applicable policy
>> statements issued by the Sentencing Commission.

Thus in order to obtain relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must satisfy

the exhaustion requirement and demonstrate that "extraordinary and compelling reasons"

warrant a reduction of his sentence or compassionate release.  In addition to this showing,

the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) and

determine whether a sentence reduction would be "consistent with applicable policy

statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

In his motion, Defendant claims he satisfied the exhaustion requirement and that

his health conditions in the wake of the COVID-19 pandemic are extraordinary and

compelling circumstances warranting compassionate release under § 3582(c).  The

Government does not dispute that Defendant exhausted the statutory prerequisites for

seeking this relief.   And the Government concedes Defendant's health conditions

constitute an extraordinary and compelling circumstance in the wake of the COVID-19

pandemic.[1]  The Government argues, however, that Defendant is not entitled to release

---

[1] Although the Government titles Section A of the "Argument" section of its brief as "Owdish Has
Not Established Extraordinary and Compelling Circumstances Necessary to Warrant Compassionate
Release," the Government ultimately concludes, "The government therefore concedes that Owdish's

under § 3582(c) because he allegedly poses a continued danger to the community. The Government further contends that notwithstanding Defendant's health conditions and the threat of COVID-19, consideration of § 3553(a) factors supports denying the motion. Having considered the record in its entirety, the Court disagrees the Government's position under the facts and circumstances presented here.

Although the sentence imposed on Defendant was just, the Court holds that the threat posed by COVID-19, in light of Defendant's underlying health conditions, constitutes an extraordinary and compelling reason to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(I). As stated by the *Zukerman* court, "[t]he severity of [Defendant]'s conduct remains unchanged. What has changed, however, is the environment where [Defendant] is serving his sentence. When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *Zukerman*, 2020 WL 1659880, at *6 (citing *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).

The United States Sentencing Commission has defined "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, comment n.1. There are extraordinary and compelling reasons for modification where "[t]he defendant is ... suffering from a serious physical or medical condition ... that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

---

medical conditions, specifically his BMI over 30, qualify as an extraordinary and compelling reason during the COVID pandemic."

The Government concedes that Defendant's medical conditions qualify as an extraordinary and compelling reason for his release.  Thus, there is no dispute that Defendant establishes "extraordinary and compelling reasons" or that his release would be consistent with the applicable policy statement issued by the Sentencing Commission. Moreover, the Court finds Defendant's health conditions, in the wake of the COVID-19 pandemic, constitute an extraordinary and compelling reason that justifies compassionate release. *See United States v. Alam*, No. 15-20351, 2020 WL 4218209, at *4 (E.D. Mich. July 23, 2020) (quoting *United States v. Rahim*, 2020 WL 2604857 at *3 (E.D. Mich. May 21, 2020)) ("[T]he heightened risk of severe illness or death faced by [the Defendant] if or when he inevitably comes in contact with the virus ... creates the extraordinary and compelling circumstances here.").

The Court now turns to the Government's contention that Defendant poses a danger to the community and that he is therefore not eligible for compassionate release even though he presents extraordinary and compelling reasons warranting such relief. The Government is correct that in order to be entitled to compassionate release, a defendant must "not be a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13.  18 U.S.C. § 3142(g) outlines factors to be considered when determining whether a defendant presents a danger to the safety of any other person and the community:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).  The Government argues that, applying these factors, Defendant is a danger to the community.  The Court disagrees.  Defendant was convicted of non-violent fraud-based offenses.  Defendant has no violent criminal history.  He was convicted of a single drug offense over thirty years ago and ultimately released on parole.  He was released and remained on bond during the pendency of his case.  He had no bond violations, and prior to his sentence being imposed, the Government never argued to this Court that Defendant posed a danger to the community.  Defendant is in his fifties and has a host of medical issues.  Based on the Court's intimate knowledge of this case and Defendant's history and characteristics, there is no indication that Defendant's release would threaten the community.

Finally, the Court finds that consideration of the factors set forth in § 3553(a) weighs in favor of granting the requested relief.  The nature and circumstances of

Defendant's offense are serious, and that one factor could conceivably weigh against granting compassionate release. See § 3553(a)(1).  But the Court finds that releasing Defendant to home confinement at this point and under these circumstances would be consistent with the other § 3553(a) factors, and the Court concludes that those factors outweigh the seriousness-of-offense factor.

Defendant's most relevant personal characteristic is his health and vulnerability to COVID 19.  This factor weighs in favor of release.  Similarly, the statutory goal of imposing punishment would be satisfied by releasing Defendant to home confinement now. Defendant has served meaningful time in prison.  He only has a few months remaining on his sentence, and he will continue to bear additional restrictions on his liberty through home confinement.

The Court further finds that releasing Defendant under these unusual circumstances—his poor health and the COVID-19 pandemic—will not undermine the goal of general deterrence.  Moreover, as discussed, there is no evidence that Defendant poses a continued danger to the community and releasing Defendant to home confinement will not subject the public to greater risk.  And Defendant's release will not produce unwarranted sentencing disparity because it accounts for his unique medical conditions in consideration of the COVID-19 pandemic.  Thus granting the requested relief is consistent with and supported by the § 3553(a) factors.

### III.    CONCLUSION

Accordingly, for the above stated reasons, **IT IS HEREBY ORDERED** that Defendant's Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) is **GRANTED**.  The custodial portion of Defendant's sentence is reduced to

time served, and the Court imposes a new term of supervised release equal to the unserved portion of the original term of imprisonment (as calculated by the BOP). Following the completion of this newly imposed term of supervised release, Defendant shall begin serving the three-year term of supervised release that the Court imposed in Defendant's original Judgment.

It is further ordered that unless Defendant has been in a segregated special unit for high-risk prisoners for more than 14 days where no inmate has tested positive or shown symptoms of COVID-19 within the past 14 days, the Court orders Defendant to self-quarantine within his home when he begins home confinement.  Defendant shall serve the new term of supervised released under home confinement and shall not leave his residence other than for medical appointments and appointments with counsel.  While on supervised released, Defendant shall be subject to electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other considerations as the Probation Department deems necessary.  Defendant must contact the Probation Department within twenty- four (24) hours of release from BOP custody to schedule an appointment.

Defendant's original sentence remains unchanged in all other respects.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge


Dated:  August 11, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 11, 2020, by electronic and/or ordinary mail.

8

<u>s/Lisa Bartlett</u>
Case Manager